**LOCAL UNION NO. 38, SHEET METAL WORKERS' INTERNATIONAL ASSOCIATION, AFL–CIO, Plaintiff,**

v.

**Anthony TRIPODI, Defendant.**

**No. 94 Civ. 8926 (WCC).**

United States District Court, S.D. New York.

Feb. 2, 1996.

Law Offices of Jeffrey S. Dubin (Jeffrey S. Dubin, of counsel), Garden City, New York, for Plaintiff.

Anthony J. Tripodi, Riverside, Connecticut, Pro Se.

## OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge:

Plaintiff Local Union No. 38, Sheet Metal Workers' International Association, AFL–CIO ("Local 38") brought this action pursuant to section 301 of the Labor–Management Relations Act of 1947, 29 U.S.C. § 185, against defendant Anthony Tripodi ("Tripo-

di") to enforce a $21,000 fine assessed by Local 38 against Tripodi for alleged violations of the Constitution and Ritual of the Sheet Metal Workers' International Association and Affiliated Local Unions, State District and Provincial Councils (the "Union Constitution"). Plaintiff is an unincorporated labor organization with its principal office in Brewster, New York, and regularly conducts its business and activities in the States of New York and Connecticut. Defendant, a resident of Connecticut, was a member of Local 38 during some, but not all, times relevant to this case. Defendant was charged with violations of the Union Constitution, and he was fined $21,000.

This court conducted a one-day bench trial on December 12, 1995. This opinion constitutes the court's findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a). For the reasons discussed below, we enter judgment in favor of defendant.

## DISCUSSION

Defendant Tripodi had been a loyal member of Local 38 for some thirty years. In March 1993, defendant was laid off by his employer, Donald Creadore Co. Inc. Defendant claims that he was laid off, at least in part, because he was a loyal member of Local 38 and adhered to union rules. Local 38 declined to champion his cause when he was laid off, and Tripodi was left to seek work elsewhere.[1] Unable to find work with a "union shop," defendant opened his own business in May 1993 under the name of Professional Sheet Metal and Roofing, Inc. The Union Constitution requires that members who become owners of a sheet metal shop or business obtain a withdrawal card and, inter alia, operate under a union agreement ("Union Agreement").

In August 1994, Local 38 received an anonymous tip that a member of Local 38 was conducting sheet metal work without a Union Agreement. After an investigation, Local 38 concluded that Tripodi was the responsible party. On October 5, 1994, at a hearing

---

1. Defendant asserted a counterclaim against plaintiff alleging that plaintiff's failure to intervene on his behalf against his former employer caused him damages in excess of $50,000. This counterclaim was dismissed as untimely by Opinion and Order of this court on November 30, 1995.

before the Executive Council of Local 38 (the "Hearing"), Tripodi was charged with violating seven provisions of the Union Constitution. After the Hearing, the Executive Council issued a fine of $3,000 per violation, or a total of $21,000. Defendant has neither paid nor appealed this fine. Local 38 brought the instant action to collect the $21,000 fine assessed at the Hearing.

Defendant's principal argument is that he was no longer a member of Local 38 at the time of the alleged violations and at the time of the Hearing. He argues that the Executive Committee and Local 38 thus lacked the power to issue a fine against him. He argues in the alternative that, even assuming that he technically was a member of Local 38, plaintiff still may not fine him for operating a sheet metal business without a Union Agreement because he was given leave to do so.

At trial, Local 38 presented three witnesses and introduced various documents into evidence. The crux of its case is as follows:

1) In August 1994, defendant Tripodi performed sheet metal work at two locations without first receiving a "withdrawal card" from Local 38. At the time, Tripodi was a member of Local 38 and a signatory to the Union Constitution which provided, inter alia, that

> Good standing members who become owners, partners, agents, contractors, or subcontractors . . . of a sheet metal shop or business . . . shall be eligible to receive and retain withdrawal cards only if, (1) such sheet metal shop or business in which they are interested continues to operate under a Union Agreement with the local union in whose jurisdiction such business is conducted, (2) not more than one (1) person connected or associated with the management of the sheet metal shop or business in which they are interested, whether such persons hold withdrawal cards or not, works with the tools of the trade and then in the shop only, and (3) at least one (1) member of this Association is employed on all work cov-

ered by Article One (1), Section 5 of this Constitution. . . .

Ex. 2 art. 16 § 6(c), at 78.

2) The Executive Committee of Local 38 conducted a hearing on October 5, 1994, where defendant was given an opportunity to answer the "Charges of Misconduct," which charged defendant with violating seven provisions[2] of the Union Constitution. Plaintiff assessed a $21,000 fine ($3,000 per provision violated).

3) Defendant had paid his dues through the end of October 1994, and terminated his membership by letter dated October 21, 1994. Therefore, he was a member of Local 38 at the time that the fines were imposed.

Defendant, appearing *pro se,* challenged each of the seven charges that were asserted against him at the October 5, 1994 Hearing. Before he could complete his recitation of responses to each of the seven charges, plaintiff's counsel, Mr. Dubin, indicated that plaintiff would stipulate that only the charges with respect to three subsections of article 17 were relevant:

> MR. DUBIN: We'll stipulate that only subsections (e), (g) and (h) were relevant to your conduct, and that (i), (j), (k), (m) and (n) were not.

Trial Transcript at 48. Because the fines had been assessed at $3,000 per infraction charged, plaintiff waived at trial all fines over $9,000. *See id.* at 49. Furthermore, as defendant argued, because plaintiff never charged defendant with violation of subsection (g), *see* Pl.'s Ex. 4, a charge for violation of that subsection cannot be sustained. Thus, defendant's testimony at trial earned him at least a $15,000 reduction in the fine.

Defendant's success does not end there. Defendant has asserted, since the beginning of this action, that he was not a member of Local 38 at the time of the alleged violations and that he therefore cannot be bound by the terms of the Union Constitution. *See, e.g.,* Answer ¶ 14 ("[P]ursuant to Article 16 Section 6(c) and Section 6(g) of the Union Constitution between the parties, Plaintiff's lay

---

2. The "Charges of Misconduct," *see* Pl.'s Ex. 4, charged violation of article 17, sections 1(b); 1(c); 1(e); 1(f); 1(h); 1(j); 1(m) of the Union Constitution.

off from employment and his subsequent entry into his own business constitutes a withdrawal from Plaintiff's membership, effective on or about July 21, 1993."); Trial Transcript at 46 ("[Local 38] disregarded Exhibit B, Article 16, Section 6(c) and 6(g), which states that if a card-carrying member opens a non-union business, after specific time period, said member is automatically terminated. He cannot be charged, tried or fined, even though dues were paid, since they, by union bylaws, should not have been accepted. This means that as of April 27, 1993, I became a nonunion business."). We find defendant's position compelling. Article 16 section 6(g) of the Union Constitution provides as follows:

> Any member who fails or refuses to request and receive a withdrawal card in accordance with the provisions of this Constitution within thirty (30) days from the change of his employment status, as provided herein shall not be permitted to pay any further dues, fees or taxes to his local union or this Association and at the expiration of two (2) months from the date of this change of employment status *shall automatically forfeit his membership and all of the rights and privileges in connection therewith.*

Pl.'s Ex. 2 art. 16 § 6(g) (emphasis added). Therefore, by the terms of the Union Constitution, Tripodi's membership in Local 38 terminated in July 1993—two months after opening his own sheet metal business.

■ The facts that defendant continued to pay "union dues" through October 1994, and that he sent a letter purportedly terminating his membership on October 21, 1994 are not dispositive. His membership already had terminated in July 1993 by operation of the Union Constitution. Tripodi concedes that he continued to pay "union dues" through October 1994, but he testified that he did so because he believed that it was the only way to maintain health benefits for himself and his family. We find defendant's testimony credible. Furthermore, he testified that he was granted leave by board members of Local 38 to build up his business and to sign a Union Agreement (i.e., become a union shop) when he felt he could afford to join. We find that testimony credible. Whatever arrange-

ment may have been created between Local 38 and Tripodi by Tripodi's continued payment of "union dues" and Local 38's continued coverage of Tripodi's health care needs, it is clear that the arrangement did not contemplate or result in continuation or revival his prior Union membership. We find that Tripodi operated his own business in good faith, believing that he was no longer bound by provisions of the Union Constitution.

■ A complicating factor in this decision is the fact that defendant never responded to plaintiff's Requests for Admission, dated August 14, 1995, in which plaintiff requested that defendant admit that "[d]uring 1993 and until October 24, 1994, [Tripodi] was a member of Local 38...." Pl.'s First Requests for Admission ¶ 10. Rule 36(a) of the Federal Rules of Civil Procedure provides that matters are deemed admitted when a party fails to respond to properly submitted requests for admission. The requested admission, if made, would preclude Tripodi from disputing that he was a member of Local 38 at the time of the alleged violations of the Union Constitution and at the Hearing. In this case, however, we are reluctant to preclude defendant from disputing that he was a member of Local 38 during the times in question based solely on his failure to comply with discovery requirements of the Federal Rules of Civil Procedure. The sanctions expressed by Rule 36(a) are not mandatory: The Rule expressly provides that the court may shorten or lengthen the time a party is allowed to respond. *See* Fed. R.Civ.P. 36(a) ("The matter is deemed admitted unless, within 30 days after service of the request, *or within such shorter or longer time as the court may allow* ... the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter...." (emphasis added)). "Because the district court has the power to allow a longer time, courts and commentators view this to mean that the court, in its discretion, may permit the filing of an answer that would otherwise be untimely." *Gutting v. Falstaff Brewing Corp.,* 710 F.2d 1309, 1312 (8th Cir. 1983) (citing *Moosman v. Joseph P. Blitz, Inc.,* 358 F.2d 686, 688 (2d Cir.1966); *Pleas-*

*ant Hill Bank v. United States,* 60 F.R.D. 1, 2–3 (W.D.Mo.1973); 8 C. WRIGHT & A. MILLER, R. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2257, at 719–20 (1970)). Therefore, the failure to respond in a timely fashion does not require the court automatically to deem all matters admitted. *Id.*

■ Furthermore, under Rule 36(b), the court has discretion to excuse the defendant from its admissions. *Donovan v. Carls Drug Co.,* 703 F.2d 650, 652 (2d Cir.1983); *see also* Fed.R.Civ.P. 36(b) ("[T]he court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defenses on the merits."). Therefore, the court has power to excuse the defendant from its admissions "when (1) the presentation of the merits will be aided and (2) no prejudice to the party obtaining the admission will result." *Id.; see also* 8A C. WRIGHT, A. MILLER & R. MARCUS, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 2257, at 543 (1994). The presentation of the merits clearly would be served here by permitting defendant to dispute a central issue in this case—i.e., whether or not he was a member of Local 38 during the times in question. From the very onset of this litigation, defendant has asserted that he was not a member of Local 38 during the times in question and that Local 38 therefore lacked the power to fine him for the alleged violations. As discussed above, we agree that defendant's membership had terminated by operation of the Union Constitution. Also, plaintiff suffered no prejudice due to its reliance (even assuming it was reasonable) on the deemed admission that defendant was a member of Local 38. Plaintiff was prepared to (and did) prove up defendant's membership with evidence that defendant paid "union dues" through the end of October 1994 and terminated his membership by letter received on October 24, 1994.

■ Finally, defendant appeared at trial *pro se,* and has been *pro se* since September 15, 1995. Although defendant was technical-ly represented by counsel at the time that plaintiff served the Requests for Admission, defendant released his attorney very shortly thereafter due to rising legal costs. Defendant may not have been aware of the Request for Admission, much less of the consequences of failing to respond to it. We have reason to believe that defendant's counsel provided little, if any, legal advice regarding discovery or trial preparation. We do not believe that to deem a central fact to have been admitted by the failure of this *pro se* defendant to respond to the Request for Admission would further the interests of justice.

■ Even assuming, *arguendo,* that defendant was a member of Local 38 during the times in questions, we hold in the alternative that plaintiff is equitably estopped from asserting fines against defendant for operating his own sheet metal business without a collective bargaining agreement. Plaintiff knew that defendant had been laid off in March 1993. Furthermore, defendant's testimony that Local 38 was aware that defendant was operating a non-union shop is undisputed. Indeed, even plaintiff's witness, Mr. Hertel, President of Local 38, acknowledged that he was aware that defendant was in the process of building up his own business without a union card. Finally, defendant was specifically told by board members of Local 38 that he could operate his own business and become a union shop when he felt financially capable. Defendant reasonably relied on representations by plaintiff that he would be permitted to operate his business without signing a Union Agreement, even though he was paying "union dues" in order to maintain health care coverage for him and his family. In such circumstances, plaintiff should not be allowed to impose a fine against defendant for committing the very act that plaintiff gave him leave to perform.

*CONCLUSION*

For the foregoing reasons, we enter judgment for defendant on plaintiff's claim for enforcement of the $21,000 fine. The com-

plaint is dismissed; each party shall bear its own costs.

SO ORDERED.